(73 Misc. Rep. 28.)

### In re FEDERAL UNION SURETY CO.

(Supreme Court, Special Term, New York County. July, 1911.)

1. REFERENCE (§ 96*)—REPORT—FORM.

    Though Code Civ. Proc. § 1022, requires the report of a referee on the trial of issues of fact to state separately the facts found and the conclusions of law, a referee appointed, as authorized by section 1015, to take an account, on the filing of such an account by the official surety on a receiver's bond, need not separately state the facts and conclusions of law in his report.

    [Ed. Note.—For other cases, see Reference, Cent. Dig. § 147; Dec. Dig. § 96.*]

2. RECEIVERS (§ 217*)—ACCOUNTING—ACCOUNT FILED BY SURETY.

    An account filed by the official surety on a receiver's bond should be made in accordance with chancery rule 107, requiring the accounting party to file and verify an account, and the opposing party to file objections, specifying what is wrong and how the account should be surcharged.

    [Ed. Note.—For other cases, see Receivers, Cent. Dig. § 426; Dec. Dig. § 217.*]

3. RECEIVERS (§ 214*)—LIABILITIES OF SURETIES—CHARGES.

    A receiver and the surety on his bond, though not liable for losses occurring through errors of judgment on the receiver's part in managing the property, are chargeable for property coming into the receiver's hands and the proceeds of sale thereof.

    [Ed. Note.—For other cases, see Receivers, Cent. Dig. § 423; Dec. Dig. § 214.*]

4. RECEIVERS (§ 201*)—ACCOUNTS—CREDITS—VOUCHERS.

    The disallowance of a receiver's claim for the amount of notes received, and for money claimed to have been paid on protested notes, which are not accompanied by proper vouchers, was proper.

    [Ed. Note.—For other cases, see Receivers, Cent. Dig. § 402; Dec. Dig. § 201.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. RECEIVERS (§ 95\*)—MANAGEMENT OF ESTATE—CLAIMS AGAINST ESTATE.**

Where a partnership was employed as a del credere factor to sell a cargo of lumber, and a receiver of the partnership subsequently appointed guaranteed a certain amount, the principal is entitled to such amount, though the lumber sold for less.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 173–175; Dec. Dig. § 95.\*]

Application by the Federal Union Surety Company to be released from liability on the bond of Harry S. Dewey, as receiver of the partnership property of the firm of Dixon & Dewey. On motion to confirm the report of a referee, stating the account of the receiver, filed by the surety. Motion granted.

Conway & Williams (Charles F. Williams and D. Theodore Kelly, of counsel), for substituted receiver and John T. Dixon.

Wallace, Butler & Brown (H. L. Loomis, of counsel), for Bowring & Co.

Charles S. Mackenzie, for Federal Union Surety Co.

George E. Miner, for trustee in bankruptcy.

Williams, Folsom & Strause (Charles D. Folsom, of counsel), for Dewey, receiver.

McCALL, J. The conceded facts, as shown by the report, the motion to confirm which is the matter before me, are as follows: In 1903 John T. Dixon and Harry S. Dewey entered into a partnership for the purpose of carrying on the lumber business under the firm name of Dixon & Dewey. In 1907 Dixon commenced an action against Dewey for the dissolution of the partnership. This led to an interlocutory decree, dissolving same and appointing Dewey receiver of all the partnership property, upon his giving a bond in the penal sum of $50,000 conditioned for the faithful discharge of his duties. On February 18, 1907, Dewey, as principal, and the Federal Union Surety Company, as surety, executed and filed a duly approved bond for the amount given above. On August 20, 1907, an order was entered on the application of the surety directing Dewey to file a new bond on or before August 24, 1907, and this he failed to do. On September 17, 1907, Dewey, by order of the court, was removed from his office, and Eustace Conway was appointed in his place. On January 27, 1908, an order was entered on the application of the surety company relieving and discharging said surety company of and from all liability on his bond from and after September 17, 1907, and directing Dewey to file his account, referring the taking and stating of said account to Henry L. Maxson, referee.

Dewey still failed to file his account, and on June 26, 1908, an order was made permitting the surety to file an account of the proceedings of Dewey, as such receiver, and granting leave to file objections thereto, and referring the taking of such account and hearing of objections thereto to Mr. Maxson. On August 10, 1908, the surety company filed its account. On August 25, 1908, John T. Dixon filed 29 objections to the account. Mr. Conway, the substituted re-

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ceiver, also filed objections, in which Bowring & Co. joined. By order of December 26, 1908, Mr. Williams, as trustee in bankruptcy of a creditor of the partnership, was permitted to intervene and file proof of claim and objections to the account, and under this authority did file proof of two claims against Dewey as receiver, and made and filed 13 objections to the account. An order of March 5, 1909, directed the creditors of the partnership or receiver to attend the settlement of receiver's account, and also provided for the method of settlement by mail and publication. As a result of the reference Mr. Maxson charges the receiver with $184,936.09 and credits the receiver with $32,390.72, showing a deficiency of $152,545.37, which Dewey in the faithful discharge of his duties as receiver should have turned over to his successor.

To the referee's report the surety company urges 21 and Williams as trustee urges 4 objections and exceptions. All of the above may be summarized and condensed under the following heads: I. Form of the report of referee. II. The finding that the report of the surety company is not in the form prescribed by law. III. That Dewey was a common-law receiver, and had authority only to do that which the court by its order directed him to do, and that for acts outside of the scope of his authority his surety cannot be charged. A. The item of $40,136.01. B. Dewey's claim to be allowed $29,051.37 for notes received and $47,924.04 for moneys claimed to have been paid on protested notes. C. The claim that Dixon & Dewey, as partners, and not the receiver, were liable for loss sustained in carrying out contracts. D. The claim that the obligations of the surety company are to be strictly construed, and cannot be extended by the receiver's act. IV. The claim of Bowring & Co. V. The claim of Williams as trustee.

[1] First. As to objection to form of referee's report, in that it does not contain or present separate findings of fact and conclusions of law. It is true that section 1022 of the Code does call for this form of procedure, but it applies only when the referee is appointed to hear and determine. In this case the referee was merely appointed to take and state account and report to the court, and this reference was one provided by section 1015 of the Code. Under such circumstances it is not necessary to separately state facts and conclusions of law.

[2] Second. As to objection that account of surety company is not in form prescribed by law, this is a purely technical objection, and, when it so patently appears that, notwithstanding the form, every claim which it presented was fully considered, and every right which it had was fully protected, leaves little merit to be gleaned therefrom. At any rate, I am of opinion that the account should have been made in accordance with the method prescribed by the 107th chancery rule. Kliger v. Rosenfeld, 120 App. Div. 396, 105 N. Y. Supp. 214.

[3] The next objection urged is really the only important one, viz., "Dewey was a common-law receiver, and had authority to do only that which the court authorized him to do; and that for acts in excess of his authority his surety cannot be charged," and the point

presented thereby is rightfully stated by the surety company's counsel to be the "pivotal point of the referee's report, which must necessarily be set aside if the referee has erred in his law, as the surety company maintains he has." Dewey was appointed "receiver of all the partnership property of said firm of Dixon & Dewey." He was empowered "to take immediate charge of and sell at his discretion at public or private sale the said property and assets of said copartnership, and to collect the debts due to said copartnership." The views of the referee on this point were clearly expressed on his ruling upon the hearing, and are set forth in full on page 23 of his report. He correctly finds that, while Dewey or his surety cannot be held liable for Dewey's errors of judgment in the management of the property, they should be held accountable for money and property which Dewey received for lumber which he sold and the proceeds of which he deposited with the assets of the receivership estate.

Upon this theory the referee charges the account of the surety with the item of $40,136.01. Dewey was receiver from February 16, 1907, to September 17, 1907, and during this time he received from customers of the partnership in cash and notes various amounts, which are fully set forth in the report of the referee. These amounts are unaccounted for. The referee surcharges the surety with the difference between the amount in notes and cash which the surety account shows Dewey received and the actual amount in notes and cash which Dewey in fact received. This difference aggregates in notes $26,603.59, and in cash $13,532.42, making a total of $40,136.01. The proof to show that Dewey received these notes and cash is fully reviewed in the referee's report, and, in view of the fact that they are not accounted for, in my judgment clearly justifies the act of the referee in so surcharging the account; and right here may be clearly seen the justification and correctness of the referee's attitude on this "pivotal point." He does not charge Dewey or his surety with losses sustained in carrying on business or filling contracts, but merely for money or property which he received and deposited with the other assets of the estate. It will therefore be seen that it makes no difference what the character of the receivership was that Dewey was filling. He certainly had the power to collect the partnership estate. This he did. The ruling of the referee merely holds him and his surety chargeable for that part of the estate which came into his hands and for which he makes no account.

[4] In reference to the referee's disallowance of the two claims of Dewey, being $29,051.37 for notes received and $47,924.04 for money claimed to have been paid on protested notes, I cannot see how the referee could have acted otherwise. No vouchers for these amounts were presented, and the referee was merely applying the principle "that a party accounting must produce vouchers for payments claimed to have been made by him." The objections C and D, supra, are covered by the attitude of the referee taken in reference to the item of $40,136.01, and calls for no reiteration in this memorandum in disposing of them. . . .

[5] As to the claim of Bowring & Co., it is based upon the fact that they employed Dixon & Dewey as del credere factors to sell a cargo of lumber on the ship Obrig. The sale was made, and as a result $11,735.26 actually went into the receiver's funds. Upon this money Dewey was entitled to a commission of $4,999.52, which left a balance due Bowring & Co. of $6,735.74. This money came into Dewey's hands and was the property of Bowring & Co. See Middleton v. Twombly, 125 N. Y. 520–525, 26 N. E. 621. While $11,735.26 was the result of the sale in cash, it was shown that $12,194.88 was guaranteed by Dewey under the terms of contract. Therefore, under the rule that under the terms of a del credere commission the factor is personally liable to his principal, the referee allowed to Bowring & Co. the additional sum of $459.62, finding also that the contract was a partnership contract entered into before the receivership the benefits of which accrued to the partnership, and therefore Dewey was authorized, if he deemed it advisable, to carry it to completion.

As to the referee's disposition of Williams' claim as trustee I approve of it. There is no need of setting out same in detail, but in my judgment he justifies himself for the attitude he assumes in reference to same. The referee is to be commended for the painstaking manner and the diligence and care he has shown in disposing of what is without doubt a very involved and troublesome case, and the motion to confirm his report is granted. Settle order on notice.

Motion granted.